IN THE CIRCUIT COURT, FOURTH JUDICIAL CIRCUIT, IN AND FOR DUVAL COUNTY, FLORIDA

CASE NO.
DIVISION:

MICHAEL WARD AND
JENNIFER GLOCK FOUNDATION,
a New York nonprofit,

 Plaintiff,

v.

THE ONE LOVE FOUNDATION IN
HONOR OF YEARDLEY LOVE, INC.
a Maryland corporation,

 Defendant.
_____/

## COMPLAINT

 The Michael Ward and Jennifer Glock Foundation (the "Foundation") sues The One Love Foundation in Honor of Yeardley Love, Inc. ("One Love") and says:

### INTRODUCTION

 1. For years, the Foundation supported One Love as it grew from a mere idea to a leader in the national movement to end domestic violence. With the Foundation's backing, One Love reached millions of young people through workshops led by tens of thousands of volunteers. The volunteers led conversations about recognizing the signs of abusive relationships early and getting out. These programs saved and changed lives.

2. As One Love became more effective, it began to raise tens of millions of dollars, and its reach broadened. In mid-2020, Sharon Love—the mother of Yeardley Love and a founder of One Love—became highly critical of the organization and particularly its outreach to LGBTQ and minority communities. Her criticisms and the fact that she had the right under One Love's bylaws to dismiss the organization's independent directors created tremendous instability and uncertainty.

3. When the time came in 2022 for the Foundation to decide whether to continue funding One Love, Michael Ward sought to ensure the Foundation's funds would support One Love's existing executives and strategic plan, not one person's agenda.

4. To this end, Mr. Ward, on behalf of the Foundation, and One Love's CEO, Ms. Katie Hood, on behalf of One Love, executed an Agreement on December 12, 2022 (attached as Exhibit A).

5. Under the Agreement, the Foundation promised to donate $1 million to One Love in December 2022 and $500,000 in June and December 2023 on the condition that One Love's current leadership would continue executing its strategic plan. One Love promised that if key personnel left or One Love veered from its strategic plan, it would notify Mr. Ward and address his concerns or send the Foundation's contribution to a different nonprofit of Mr. Ward's choosing.

6. Unfortunately, Mr. Ward's apprehensions were well-founded. Over the last nine months, the founders' actions have caused fourteen of fifteen independent Board

members, including Mr. Ward, to resign. The only independent Board member who did not resign chose to leave when her term expired.

7. In addition, One Love's CEO and at least eight other employees have resigned. Fundraising has been in a freefall, and One Love has laid off fourteen employees, including most of its senior team. The organization is in disarray.

8. The actions and changes have made it impossible for One Love to carry out the purpose of the Foundation's grants, and Mr. Ward has asked One Love to redirect this most recent contributions to another nonprofit. One Love has refused to do so. This lawsuit seeks to hold One Love to its obligation.

## PARTIES, JURISDICTION, AND VENUE

9. The Michael Ward and Jennifer Glock Foundation is a New York foundation organized for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986.

10. The One Love Foundation in Honor of Yeardley Love, Inc. is a Maryland corporation organized for charitable purposes within the meaning of Section 501(c)(3) of the Internal Revenue Code of 1986.

11. One Love operates and engages in business across Florida. One Love solicits donations from within Florida, including those at issue here. One Love touts that it "has educated more than 635,000 students in 214 schools" across Florida, including Duval County. One Love student groups are active on college campuses throughout the state,

including the University of North Florida in Duval County. In the 2022 Strategic Plan, One Love pledged to expand its efforts in Florida further.

12. This Court has jurisdiction over One Love under sections 48.193(1)(a)(1) and 48.193(1)(a)(7), Florida Statutes, because this action arises from One Love's breaching of a contract in Florida by failing to perform acts as required by the contract to be performed in Florida and from One Love's operating, conducting, engaging in, and carrying on a business or business venture in Florida.

13. This Court has jurisdiction over this matter under sections 26.012, 34.01, and 86.011, Florida Statutes, because this is an action for declaratory relief, specific performance, and damages exceeding $50,000, exclusive of interest, costs, and attorneys' fees.

14. Venue is proper in this Court under section 47.051, Florida Statutes, because the Foundation's causes of action accrued in Duval County, Florida.

15. All conditions precedent to bringing this action have been met or waived.

## GENERAL ALLEGATIONS

**A.   One Love's Founding and Exponential Growth**

16. One Love (f/k/a Yeardley Reynolds Love Foundation, Inc.) was established in 2011. Its mission was to provide academic scholarships, promote the healthy development of young people through sports, and help construct and maintain athletic facilities for children.

17. One Love's mission quickly changed to focus on developing programs to end relationship violence. This mission change drew the attention of Michael Ward, and his

Foundation began supporting One Love in 2012 and has contributed $8.75 million to One Love in the years since.

18. The Foundation's initial contributions funded an educational film, *Escalation*. The film was a novel approach to educating young people about the warning signs of relationship abuse. *Escalation* was widely effective and became One Love's breakthrough project.

19. On the heels of *Escalation*'s success, One Love hired Katie Hood as its CEO. Before joining One Love, Ms. Hood had established herself as one of the leading executives in the nonprofit sector, having served as CEO of the Michael J. Fox Foundation for Parkinson's Research. At One Love, Ms. Hood was tasked with building on *Escalation*'s momentum and increasing the organization's capacity to educate young people about the warning signs and dangers of relationship abuse.

20. With Ms. Hood in charge and a Board of experienced executives and philanthropists, One Love's reach and effectiveness increased exponentially.

21. Because of COVID-19, One Love's fundraising suffered in 2020. The Foundation filled the gap, however, by providing additional gifts to ensure that One Love would not have to lay off staff or otherwise slow its momentum.

22. By 2022, One Love's in-person programs reached over 2 million people; more than 500 high school and college students signed up as One Love Youth Ambassadors; and One Love hosted an online digital center where more than 9,500 people completed nearly

30,000 courses. One Love had 48 full-time staff, annual revenue of $10.8 million, and assets of $11.4 million.

**B.  Ms. Love's Criticisms of One Love**

23.  Back in 2020, as One Love emerged from COVID-19 and continued to grow, Ms. Love began to openly and harshly criticize One Love, particularly its outreach to the LGBTQ and minority communities.

24.  After the George Floyd murder, Ms. Love criticized One Love for "jump[ing] on the band wagon of BLM" [Black Lives Matter] and expressed her dismay at the "outpouring of sympathy and support" for the Black community.

25.  Believing that One Love's Board and leadership were doing too much to help LGBTQ and minority communities and not enough to address her concerns, she all but abandoned One Love. She explained that she was "plagued by stress and the only way [she knew] how to stop the stress [was] by walking away from [the] unhealthy relationship" she had with One Love. For years, Ms. Love did not participate in the day-to-day management of One Love or even attend a Board meeting.

26.  In May 2022, One Love approached the Foundation about providing additional funding to One Love. Those conversations resulted in the Foundation signing the document attached as Exhibit B, which outlines the gifts that the Foundation contemplated. About a week after signing that document, however, Ms. Love reemerged and began openly complaining about One Love's direction. Among other things, she said that One Love was a

"runaway foundation" that was "not aligned with [its] mission statement." She accused One Love of "falsely presenting" its messaging and even "endangering young lives."

27.     Ms. Love also regularly criticized Ms. Hood and her leadership. Ms. Love's hostility was such that the Board asked her and Ms. Hood to work with a third-party mediator to help ease the tension. The mediation, however, was unproductive.

C.     **One Love and the Foundation enter the Agreement**

28.     Given Ms. Love's threats and behavior—and the fact that she possessed the power to control the composition of the Board—Mr. Ward grew concerned about One Love's future and whether the gifts he contemplated sending One Love would be wasted.

29.     Ms. Hood contacted Mr. Ward about the potential contributions, and he shared his reservations about Ms. Love's behavior, the tensions between Ms. Love and Ms. Hood, and the tensions between Ms. Love and the Board. Given the circumstances, Mr. Ward concluded, the Foundation would not contribute to One Love at this time.

30.     During the fall, Ms. Hood continued a dialogue with Mr. Ward, and Mr. Ward continued refusing to contribute because Ms. Hood could not give assurances that the issues had been resolved.

31.     After multiple calls, the Foundation and One Love came to an agreement. The Foundation agreed that it would send additional contributions to One Love. In return, One Love assured the Foundation that its contributions would be directed towards the strategic plan adopted by the Board, and, among other things, if Ms. Hood or other key personnel left, and in Mr. Ward's opinion, the departures adversely impacted One Love's ability to

accomplish the purpose of the Foundation's grant, One Love would redirect the money to another 501(c)(3) organization of Mr. Ward's choosing. The Agreement, which is attached as Exhibit A, was later committed to writing and signed by the parties.

    32.    The pertinent portion of the Agreement provides:

- First, you have specified that your commitment is to be directed towards supporting the execution of One Love's strategic plan as approved by the Board in July 2022.

- Second, this addendum specifies that One Love must communicate any changes made to its strategic plan or changes that otherwise impact its ability to achieve the goals of that plan as soon as those decisions are made. Such decisions could include changes in One Love's key personnel and any other material changes in staffing, operations, funding, structure or tax-exempt status.

- Following notification, you can request a meeting to discuss the changes made, and if you determine that decisions or changes made adversely affect One Love's ability to carry out or accomplish the purpose of your grant, you can request that One Love resolve your concerns within 90 days. If One Love does not resolve your concerns, you can redirect your commitment to a 501(c)(3) of your choosing whose work is in service of your original intent.

(Agreement at 1-2.)

    33.    After entering the Agreement, One Love accepted two contributions totaling $1 million.

**D.      One Love Suffers an Exodus of Board Members and Employees**

34.     After One Love accepted the Foundation's contributions, the campaign to destabilize One Love and promote a personal agenda continued and its impact has been devastating.

35.     For months, Ms. Love and her representatives, on the one hand, and the independent volunteer Board members, Ms. Hood, and One Love leadership, on the other, were at loggerheads over One Love's governance structure and future. Neither the volunteer Board members nor One Love leadership made headway in the fight to preserve One Love as a professional, effective nonprofit organization. Instead, it has devolved into a fiefdom.

36.     One Love had seventeen Board members when the Foundation made its last contributions. Fifteen Board members, including Mr. Ward, were unpaid, independent volunteers. Fourteen of the fifteen independent Board members resigned, and the other served out her term and chose not to continue. Of the seventeen Board members, only Ms. Love and her daughter, Lexie Hodges, remain.

37.     Citing Ms. Love's criticisms and the organization's governance structure, One Love's CEO, Katie Hood, resigned.  Ms. Love replaced Ms. Hood with a friend—someone with no discernible nonprofit or business experience.

38.     Ms. Love has also chosen to relocate One Love's offices from New York to Baltimore for no reason other than that she resides in Baltimore.

39. Mr. Ward determined that the actions and events described above, including Ms. Hood's and the volunteer Board members' resignations, materially interfered with One Love's ability to carry out its strategic plan and the purpose of the Foundation's grants.

40. On June 5, 2023, Mr. Ward notified One Love of his concerns. Among other things, he asked for One Love to "realign itself to the 2022 strategic plan[] [and] reach an agreement with Ms. Hood for her reinstatement." The notice is attached as Exhibit C.

41. Under the Agreement, Mr. Ward gave One Love ninety days to resolve his concerns. The parties later met and attempted to resolve the matter, but One Love failed to act and refused to redirect the Foundation's contributions.

## COUNT I – DECLARATORY RELIEF

42. The Foundation re-alleges and fully incorporates the allegations contained in paragraphs 1 through 41 of its Complaint.

43. There is a bona fide, actual, present, and practical need for a declaration of the Foundation's rights under the Agreement.

44. The declaration sought by the Foundation concerns a present, ascertained, or ascertainable state of facts, or a present controversy as to a state of facts.

45. The Foundation's rights under the Agreement depend on the facts recited herein or the law applicable to those facts.

46. The Foundation and One Love have an actual, present, adverse, and antagonistic interest in the Agreement.

47. All persons with an adverse and antagonistic interest are before this Court.

48. The declaration the Foundation seeks does not amount to mere legal advice.

49. The Foundation seeks a declaration of its rights and One Love's obligations with respect to the Agreement and, specifically, a declaration that the Agreement is valid and binding against One Love, and One Love is obligated to redirect the $1 million the Foundation contributed to One Love in December 2022 to another nonprofit of the Foundation's choosing.

50. The Foundation seeks supplemental relief under section 86.061, Florida Statutes, to make the judgment effective by ordering One Love to transfer $1 million to the nonprofit of the Foundation's choice.

WHEREFORE, Plaintiff Michael Ward and Jennifer Glock Foundation requests that this Court enter judgment declaring that the Agreement is binding and that the Foundation is entitled to have One Love redirect the contributions made in December 2022 totaling $1 million to a nonprofit of the Foundation's choice and, as supplemental relief, order One Love to redirect $1 million to the selected nonprofit, together with an award of costs and all such further and additional relief as this Court may deem just and proper.

## COUNT II – SPECIFIC PERFORMANCE

51. The Foundation re-alleges and fully incorporates the allegations contained in paragraphs 1 through 41 of its Complaint.

52. This is an action for specific performance of a contract.

53. The Agreement is a contract between the Foundation and One Love.

11

54. The Foundation fulfilled its obligations to One Love under the Agreement, to wit: the Foundation contributed $1 million to One Love in December 2022, provided notice to One Love on June 5, 2023, of actions that impacted One Love's ability to carry out the purpose of the grants, and gave One Love a fair opportunity to resolve its concerns.

55. One Love has breached the Agreement by, among other things, failing to address and resolve the Foundation's concerns and failing to redirect the Foundation's contributions to another 501(c)(3) organization.

56. The Foundation has no adequate remedy at law. In the absence of the relief requested, the Foundation will suffer irreparable harm.

57. In the interests of fairness and justice, the Court should require One Love to perform its obligation under the Agreement and redirect $1 million to a 501(c)(3) organization of the Foundation's choosing whose work is in service of the Foundation's original intent.

WHEREFORE, Plaintiff Michael Ward and Jennifer Glock Foundation prays for judgment in its favor, the specific performance outlined in paragraph 57 above, together with an award of costs, and all such further and additional relief as this Court may deem just and proper.

BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
Professional Association

By: s/Michael E. Lockamy
 Michael E. Lockamy
 Florida Bar No. 69626
 Primary Email: mel@bedellfirm.com
 Secondary Email: kjl@bedellfirm.com
 Sarah R. Niss
 Florida Bar No. 1039817
 Primary Email: srn@bedellfirm.com
 Secondary Email: kjl@bedellfirm.com
 The Bedell Building
 101 East Adams Street
 Jacksonville, Florida 32202
 Telephone: (904) 353-0211
 Facsimile: (904) 353-9307

Counsel for Plaintiff Michael Ward and Jennifer Glock Foundation