UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

MICHAEL WARD AND
JENNIFER GLOCK FOUNDATION,
a New York nonprofit,

    Plaintiff,

v.                                              Case No. 3:23-cv-1220-TJC-MCR

THE ONE LOVE FOUNDATION IN
HONOR OF YEARDLEY LOVE, INC.,
a Maryland corporation,

    Defendant.
_____/

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO
DEFENDANT'S MOTION TO DISMISS OR TRANSFER VENUE**

Defendant The One Love Foundation in Honor of Yeardley Love, Inc. ("One Love") oversees programs that have reached more than a million Floridians since 2018. One Love has located employees in Florida, including within this District, and, as part of its strategic plan, tasked them with expanding One Love's reach within Florida. And in the two calendar years before this lawsuit was filed, more than a fifth of the donations One Love received came from Florida-based donors. This lawsuit arises from a dispute with one of those donors: Plaintiff Michael Ward and Jennifer Glock Foundation (the "Foundation"), which has its sole office in this District and is run by trustees who reside in Duval County, Florida.

One Love nevertheless contends in its motion to dismiss or transfer venue (ECF No. 10) that this Court lacks personal jurisdiction. Incredibly, One Love even insists

it has *never* done business in Florida. One Love's motion should be denied.

## BACKGROUND

One Love was formed in 2010 with the goal of ending relationship violence. Affidavit of Sharon Donnelly Love ¶ 4, ECF No. 10-1. In the years since, One Love's operations have systematically targeted residents of Florida. *See* Declaration of Michael Ward ¶¶ 20-33, attached hereto as Exhibit A; *see also id.* Exs. 1-3. One Love admits that from 2018 through February 2024, its programs reached over a million Floridians. Interrog. Ans. 6-7, attached as Exhibit 1 to Declaration of Michael E. Lockamy, which is attached hereto as Exhibit B. It also admits that apart from a gap from July 2022 to January 2024, it has had at least one employee—sometimes two—based in Florida since May 2016, including a "Florida Regional Engagement Coordinator" and a "Director of Program Growth." Interrog. Ans. 5. And One Love admits that it has partnered with more than thirty businesses in Florida and more than fifty schools, school districts, and colleges. *Id.* at 4, 10-11.

In November 2018, One Love's education programs had "reached 128,000 students to date this year in Florida." Ward Decl. ¶ 23; *id.* Ex. 1 at 17. Not content with that reach, One Love was expanding its partnerships with school districts in several Florida counties, including six within the Middle District. *Id.* ¶ 23; *id.* Ex. 1 at 17.

One Love was also searching for "an engagement coordinator for Jacksonville/Northeast Florida," to be paid with funding from a philanthropist based in Duval County, Florida. *Id.* ¶ 24; *id.* Ex. 1 at 17. By 2019, One Love had hired one

"Florida Engagement Coordinator" in Jacksonville, Florida, and intended to hire another. *Id.* ¶ 27; *id.* Ex. 2 at 27-28, 59.

By 2018, One Love had also "formed a Northeast Florida Community Action Committee to bolster our movement-building in the Jacksonville area." *Id.* ¶ 25; *id.* Ex. 1 at 17. One Love "hosted [the committee's] first meeting in November [2018] with community leaders from across the region with plans to expand the group in early 2019." *Id.* ¶ 25; *id.* Ex. 1 at 17.

By 2019, as One Love's "programmatic work in Florida grew exponentially (791% growth) . . . to reach over 142,000 students," Florida residents were the biggest beneficiaries of One Love's programs. *Id.* ¶ 28; *id.* Ex. 2 at 45. One Love reported internally that year that "[t]he New York Tri-State region is . . . the second in programmatic reach *(behind Florida . . . )*." *Id.* ¶ 31; *id.* Ex. 2 at 50 (emphasis added). "Of the 372,841 reached in FY19, 39% were through large-scale partnerships in Florida." *Id.* ¶ 31; *id.* Ex. 2 at 10. One Love planned to "expand [its] educational footprint in Florida by reaching over 200,000 people state-wide in FY20 through public school districts and state-wide community-based organizations and agencies." *Id.* ¶ 29; *id.* Ex. 2 at 46.

One Love has also "delved into the policy sphere in Florida." *Id.* ¶ 30; *id.* Ex. 2 at 45. In addition to "connecting with Governor DeSantis and his staff," it has "buil[t] partnerships with state-wide agencies like the Florida Department of Education[] [and] Florida Department of Health." *Id.* ¶ 30; *id.* Ex. 2 at 45.

One Love's strategic plan declares its intention to "*deepen[] our engagement in Florida* and Texas, two markets *where we have done solid work to date* in which we can increasingly fundraise as well," and to further "expand[] our efforts in Florida." *Id.* ¶ 33 (emphasis added); *id.* Ex. 3 at 23-24 (emphasis added).

One Love's website and social media posts boast of its activities in Florida. One Love's website praises the Jacksonville Jaguars as "early partners and investors who supported [One Love's] launch in Northeast Florida" and says the Jaguars "have been instrumental in introducing us to local community organizations and schools throughout the region." Lockamy Decl. Ex. 3.

Two days before she signed an affidavit insisting that One Love "[h]as never directly engaged in any business activity in the State of Florida," Sharon Love attended the "One Love Game," a softball exhibition at the University of North Florida ("UNF"), which promoted and raised funds for One Love. Love Aff. ¶ 7(i); Lockamy Exs. 2, 5.

One Love has relied heavily on Florida funding sources for its operations, including one source in particular—the Foundation, which Ms. Love has called "One Love's biggest donor." Lockamy Decl. Ex. 4. Though the Foundation is organized under New York law, its operations are based in Duval County, where its sole office and principal place of business is located and where its sole trustees, Michael Ward and Jennifer Glock, reside. Ward Decl. ¶¶ 4-5, 7-8. Along with Ms. Glock, Mr. Ward—who also served as a member of One Love's board of directors from 2017 to May 2023—oversees the Foundation's charitable activities and makes all decisions

4

regarding those activities from Duval County.[1] *Id.* ¶¶ 9, 16.

One Love, which until the summer of 2023 was headquartered in Bronxville, New York, has solicited several large donations from the Foundation by directing communications toward Mr. Ward in Duval County. *Id.* ¶¶ 11-14, 17. On some occasions, Katie Hood, One Love's then-CEO, traveled from New York to Duval County to solicit donations from the Foundation. *Id.* ¶ 14.

The Foundation's donations to One Love from 2012 to the present total $8.75 million. *Id.* ¶¶ 11-12. One Love admits in its interrogatory answers that Florida-based donors, including the Foundation, account for 15 percent of the donations it received in 2020 and more than a fifth of what it received in 2021 and 2022.[2] Interrog. Ans. 3. Donations from the Foundation account for roughly 13 percent of the total received by One Love in 2020 and 10 percent of the totals for 2021 and 2022. *See id.* at 1-3; Ward Decl. ¶ 13.

This case arises from the Foundation's intention to donate $2 million to One Love. Love Aff. Ex. A-3. After concerns arose about One Love's future, the parties reached an agreement (the "Agreement") that the Foundation would donate $1 million in 2022 and $1 million in 2023, which would be directed "towards supporting the execution of One Love's strategic plan as approved by the Board in July 2022." *Id.* If certain events occurred, One Love was to "redirect [the Foundation's] commitment

---

[1] Mr. Ward also attended nearly all One Love board meetings from Duval County by videoconference. *Id.* ¶ 18.

[2] One Love incorrectly denies that the Foundation is based in Florida.

to a 501(c)(3) of [the Foundation's] choosing whose work is in service of [its] original intent." *Id.*

Ms. Hood solicited that intended $2 million donation and negotiated the Agreement on behalf of One Love by directing communications from New York to Mr. Ward in Duval County. Ward Decl. ¶¶ 14-15.

Indeed, by the time the Agreement was being negotiated, the Foundation had long been aware of Mr. Ward's residence in Duval County. Since at least 2017, One Love has relied on Mr. Ward to assist in its efforts to engage Florida residents. For example, in a July 13, 2017 email, Ms. Hood sent Mr. Ward a summary of One Love's "Florida Engagement Goals" and asked for help "brainstorming" about how to execute the plan. *Id.* ¶ 37; *id.* Ex. 4.

In an April 26, 2018 email, Ms. Hood asked Mr. Ward to "brainstorm about FL donors." *Id.* ¶ 40; *id.* Ex. 6. In a later email in the same thread, Ms. Hood told Mr. Ward she was "planning another trip to Jacksonville" and asked him to let her know "[i]f you think of anyone else we should try to talk to—maybe even together"—regarding potential donors in Florida. *Id.* ¶ 40; *id.* Ex. 6. In a September 29, 2018 email, Ms. Hood thanked Mr. Ward for his role in securing funding from Delores Barr Weaver, a Jacksonville-based philanthropist, to "support a full time engagement coordinator on the ground in NE Florida." *Id.* ¶ 41; *id.* Ex. 7.

The Foundation seeks to redirect its donation to another nonprofit entity under the Agreement—namely, Generation W, Inc., a Florida corporation that has its principal place of business in Duval County. Ward Decl. ¶ 45; *id.* Ex. 9. Because One

Love has refused, the Foundation alleges a breach of contract. Ward Decl. ¶ 47; Compl. ¶¶ 51-57, ECF No. 5.

## ARGUMENT

**I.      This Court has personal jurisdiction.**

When a nonresident defendant moves to dismiss for lack of personal jurisdiction, "[t]he plaintiff must establish a prima facie case of personal jurisdiction." *Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 255 (11th Cir. 1996) (quoting *Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990)). "A prima facie case is established if the plaintiff presents enough evidence to withstand a motion for directed verdict." *Id.* (quoting *Madara*, 916 F.2d at 1514).

"Where . . . the defendant submits affidavits . . . , the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction unless [the defendant's] affidavits contain only conclusory assertions that the defendant is not subject to jurisdiction." *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002). "The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits." *Robinson*, 74 F.3d at 255 (quoting *Madara*, 916 F.2d at 1514). Further, "[w]here the plaintiff's complaint and supporting evidence conflict with the defendant's affidavits, the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier*, 288 F.3d at 1269.

Here, both Florida's long-arm statute and due process authorize jurisdiction over One Love.

### A.    Florida's long-arm statute confers jurisdiction.

#### 1.    Section 48.193(1)(a)(1) confers jurisdiction.

Section 48.193(1)(a)(1), Florida Statutes, subjects a nonresident defendant to jurisdiction in Florida "for any cause of action arising from any of the following acts: 1. Operating, conducting, engaging in, or carrying on a business or business venture in this state or having an office or agency in this state." § 48.193(1)(a)(1), Fla. Stat. That standard is met here.

As the Florida Supreme Court has recognized, "There is a vast difference between the words 'a business' and the words 'business venture' . . . . One may engage in a 'business venture' without operating, conducting, engaging in or carrying on 'a business.'" *State ex rel. Weber v. Register*, 67 So. 2d 619, 620 (Fla. 1953) (en banc); *see also A. B. L. Realty Corp. v. Cohl*, 384 So. 2d 1351, 1354 (Fla. 4th DCA 1980) (observing that a "business venture" "may be established by showing a lesser involvement than would be required to prove" a "business"). In fact, "[a] 'business venture' can consist of a single project or transaction." *Atlantis Marina & Yacht Club, Inc. v. R & R Holdings, Inc.*, 766 So. 2d 1163, 1165 (Fla. 3d DCA 2000).

"'[T]here need be no local office nor agent, no lease, no meeting, no presence of corporate offices in Florida to warrant a finding of engagement in a business venture.'" *Kapila v. RJPT, Ltd.*, 357 So. 3d 241, 247 (Fla. 2d DCA 2023) (quoting *Citizens State Bank v. Winters Gov't Sec. Corp.*, 361 So. 2d 760, 763 (Fla. 4th DCA 1978), *rev. denied*, No. SC2023-0862, 2023 WL 6785604 (Fla. Oct. 13, 2023). Instead, "the defendant's activities 'must be considered collectively and show a general course of

8

business activity in the state for pecuniary benefit.'" *Id.* (quoting *April Indus., Inc. v. Levy*, 411 So. 2d 303, 305 (Fla. 3d DCA 1982)).

Such "business activity," however, need not be *for profit*—the statute applies equally to nonprofits. *See Golant v. German Shepherd Dog Club of Am., Inc.*, 26 So. 3d 60, 62-63 (Fla. 4th DCA 2010) (applying the statute to a nonprofit corporation).

Further, "[a]s used in the long arm statute, '[t]he term "arising from" is broad; it does not mean "proximately caused by," but only requires a direct affiliation, nexus, or substantial connection to exist between the basis for the cause of action and the business activity.'" *Id.* at 62 (second alteration in original) (quoting *Citicorp Ins. Brokers (Marine), Ltd. v. Charman*, 635 So. 2d 79, 82 (Fla. 1st DCA 1994)).

Here, One Love has engaged in a general course of business activity sufficient to constitute a business or business venture in Florida. For years, One Love has systematically targeted Florida residents with its fundraising and programming, reaching well over 100,000 Floridians annually—more than in any other region—for a total of more than a million Floridians since 2018. One Love has located multiple employees in Florida and has even engaged with Florida government officials to expand its reach. *See* Ward Decl. ¶¶ 19-33; *id.* Exs. 1-3.

One Love has also solicited much of its funding from Florida, including from the Florida-based Foundation—both by directing communications toward Florida and sending its CEO there in person. *See id.* ¶¶ 11-14. More than a fifth of One Love's funding in 2021 and 2022 came from Florida-based donors—about 10 percent from the Foundation alone. *See* Interrog. Ans. 3; Ward Decl. ¶ 13. Indeed, the $2 million at

9

issue in this lawsuit equals almost one-fifth the amount of One Love's total revenue for 2022. *See* Interrog. Ans. 2-3. One Love solicited that donation and negotiated the Agreement by directing communications toward the Foundation in Florida. Ward Decl. ¶¶ 14-15.

One Love is thus engaged in a business or business venture in Florida. And because this lawsuit arises from its long-standing funding relationship with the Florida-based Foundation, among other Florida donors, there is a sufficient "direct affiliation, nexus, or substantial connection . . . between the basis for the cause of action and the business activity." *Golant*, 26 So. 3d at 62.

In arguing to the contrary, One Love relies on Ms. Love's affidavit, which consists of statements that are simply false. For example, two days after a One Love business trip to Jacksonville, Ms. Love asserted that One Love "does not conduct business activities in the State of Florida" and, indeed, "[h]as *never* directly engaged in any business activity in the State of Florida." Love Aff. ¶ 7 (emphasis added). Ms. Love also asserts that One Love "[h]as no officers, employees, contractors, or other agents in Florida." Love Aff. ¶ 7(a).

The evidence squarely contradicts those assertions.[3] As detailed above, One Love deliberately targets Florida, even articulating a goal in its strategic plan to "deepen[] [its] engagement in Florida." Ward Decl. Ex. 3 at 23. One Love has located

---

[3] After asserting under oath that One Love "does not conduct business activities in the State of Florida," Love Aff. ¶ 7, One Love produced over 1.5 million pages of documents in response to jurisdictional discovery requests seeking evidence of its Florida-aimed efforts.

10

employees in Florida, including at least one Florida Engagement Coordinator in Duval County, to meet that objective. Indeed, One Love could hardly reach over a million Florida residents without a single "contractor" or "agent" in Florida. Further, a large portion of One Love's funding is attributable to its relationships with Florida donors. Given this conflict in the evidence, "the court must construe all reasonable inferences in favor of the plaintiff." *Meier ex rel. Meier*, 288 F.3d at 1269.

### 2. Section 48.193(1)(a)(7) confers jurisdiction.

Section 48.193(1)(a)(7) subjects a nonresident defendant to jurisdiction in Florida "for any cause of action arising from any of the following acts: . . . 7. Breaching a contract in this state by failing to perform acts required by the contract to be performed in this state." § 48.193(1)(a)(7), Fla. Stat. That standard is met when a defendant fails to make a contractually required payment to a recipient based in Florida. *See Global Satellite Commc'n Co. v. Sudline*, 849 So. 2d 466, 468 (Fla. 4th DCA 2003) ("Failure to pay a contractual debt where payment is due to be made in Florida is sufficient . . . ."); *see also id.* ("[W]here the contract is silent as to place of payment, it is presumed to be the place of residence of the payee.").

Here, the Agreement requires One Love to redirect the Foundation's donation "to a 501(c)(3) of [the Foundation's] choosing." Love Aff. Ex. A-4. Because the Foundation has chosen a Florida nonprofit located in Duval County, *see* Ward Decl. ¶ 45, One Love is contractually required to make a payment in Florida. Because this lawsuit arises from its failure to do so, this Court has jurisdiction.

11

## B.     Exercising jurisdiction would comport with due process.

Due process "protects a party from being subject to the binding judgment of a forum with which it has established no meaningful 'contacts, ties, or relations.'" *Del Valle v. Trivago GMBH*, 56 F.4th 1265, 1274 (11th Cir. 2022) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 319 (1945)), *cert. denied sub nom.* 144 S.Ct 90 (2023). The due-process analysis requires the Court to consider

> whether (1) the plaintiff's claims "arise out of or relate to" one of the defendant's contacts with the forum state; (2) the nonresident defendant "purposefully availed" itself of the privilege of conducting activities within the forum state; and (3) the exercise of personal jurisdiction is in accordance with traditional notions of "fair play and substantial justice."

*Id.* at 1275. Here, these factors support the exercise of jurisdiction.

First, this case arises from substantial contacts with Florida. Specifically, it arises from One Love's long-standing relationship with the Florida-based Foundation, which accounts for a large share of its funding—funding supporting programs that heavily target Floridians. Further, the Agreement at issue required One Love to use the Foundation's donation to execute a strategic plan requiring it to "deepen[] [its] engagement in Florida." Ward Decl. ¶ 33; *id.* Ex. 3 at 23.

Second, One Love has "'purposefully availed' [itself] of the privilege of conducting activities within [Florida], thus invoking the benefit of [its] laws." *Louis Vuitton Malletier, S.A. v. Mosseri*, 736 F.3d 1339, 1355 (11th Cir. 2013). One Love has repeatedly directed communications toward Florida in soliciting donations from the Foundation and negotiating the terms of those donations. It also oversees programs

12

that have reached over a million Florida residents and has engaged with Florida government officials and agencies.

Finally, exercising jurisdiction would accord with traditional notions of fair play and substantial justice. One Love has not shown that it "would be burdened by having to litigate the case in Florida." *Del Valle*, 56 F.4th at 1277. And the Florida-based Foundation "ha[s] an interest in litigating this case in [its] chosen home forum." *Id.* Finally, given One Love's contacts with Florida, Florida "has a strong interest in adjudicating this dispute." *Id.* In short, One Love's "conduct and connection with [Florida] are such that [it] should reasonably anticipate being haled into court there." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474 (1985) (quoting *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980)). Due process is satisfied.

## II. The Middle District of Florida is a proper venue for this action.

One Love raises two misguided objections to the Foundation's choice of venue. It relies first on 28 U.S.C. § 1406(a), which instructs the Court to "dismiss, or if it be in the interest of justice, transfer" a case filed in a district that is not a permissible venue. 28 U.S.C. § 1406(a). One Love also invokes 28 U.S.C. § 1404(a), which authorizes the Court to transfer a case to another district, even if venue is proper here, "[f]or the convenience of parties and witnesses." *Id.* § 1404(a).

### A. Venue is proper in this District.

In ruling on a venue challenge, "[t]he court must accept all allegations of the complaint as true, unless contradicted by a defendant's affidavits, and must draw all

13

reasonable inferences and resolve all factual conflicts in favor of the plaintiff." *Villa Gomez v. Kostiv & Assocs.*, No. 1:20-cv-22519-COOKE/GOODMAN, 2020 WL 13413700, at *1 (S.D. Fla. Oct. 27, 2020) (quoting *Kuehne v. FSM Cap. Mgmt., LLC*, No. 12-80880-CIV, 2013 WL 1814903, at *2 (S.D. Fla. Apr. 29, 2013)).

This case is governed by 28 U.S.C. § 1391. Section 1391(b) lays venue in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located; [or]
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred . . . .

28 U.S.C. § 1391(2)(b)(1)-(2). Here, venue is proper under both provisions.

### 1. Venue is proper under § 1391(b)(1).

Under § 1391, a corporate defendant resides in "any judicial district in which such defendant is subject to the court's personal jurisdiction." *Id.* § 1391(c)(2). Further, "in a multi-district state like Florida, the personal jurisdiction analysis is limited to contacts specifically in the Middle District of Florida." *Fertilizantes Tocantins S.A. v. TGO Agriculture (USA), Inc.*, 599 F. Supp. 3d 1193, 1200 (M.D. Fla. 2022). Section 1391(d) provides in part:

> For purposes of venue under this chapter, in a State which has more than one judicial district and in which a defendant that is a corporation is subject to personal jurisdiction at the time an action is commenced, such corporation shall be deemed to reside in any district in that State within which its contacts would be sufficient to subject it to personal jurisdiction if that district were a separate State . . . .

28 U.S.C. § 1391(d).

Because One Love is subject to this Court's jurisdiction, "all defendants are residents of the State in which [this] district is located." *Id.* § 1391(b)(1). Further, One Love resides in this District. Its contacts with this District, as described above, "would be sufficient to subject it to personal jurisdiction if [this] district were a separate State." *Id.* § 1391(d). Venue is therefore proper under § 1391(b)(1).

### 2. Venue is proper under § 1391(b)(2).

Under § 1391(b)(2), an action may be brought in a district "in which a substantial part of the events or omissions giving rise to the claim occurred." *Id.* § 1391(b)(2). That language "contemplates some cases in which venue will be proper in two or more districts." *Jenkins Brick Co. v. Bremer*, 321 F.3d 1366, 1371 (11th Cir. 2003). The statute thus "does not limit venue to the place where all or most of the events giving rise to the claim occurred; [it] places venue in every district where a 'substantial part' of the events occurred." *Gulf Power Co. v. Coalsales II, LLC*, No. 3:06cv270/MCR, 2008 WL 563484, at *6 (N.D. Fla. Feb. 27, 2008) (quoting *Waters Edge Living, LLC v. RSUI Indemnity Co.*, No. 4:06cv334-RH/WCS, 2007 WL 1021359, at *4 (N.D. Fla. Mar. 31, 2007)).

Here, the negotiation and execution of the Agreement occurred in this District. *See Jenkins Brick Co.*, 321 F.3d at 1372 (considering where the contract was executed); *Gulf Power Co.*, 2008 WL 563484, at *6 (considering where the contract was negotiated and signed). One Love directed the assurances that induced the Foundation to commit $2 million—assurances it later failed to live up to—toward Mr. Ward in Duval County. Mr. Ward signed the Agreement in Duval County. And One Love has refused

15

to redirect the Foundation's donation to the organization of its choice, which is based in Duval County. Because "a substantial part of the events or omissions giving rise to the claim" occurred in this District, dismissal or transfer under § 1406(a) is inappropriate. 28 U.S.C. § 1391(b)(2).

### B. Transfer under § 1404(a) is unwarranted.

Section 1404(a) allows a transfer to another district "[f]or the convenience of parties and witnesses, in the interest of justice." *Id.* § 1404(a). But "[t]he plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations." *Robinson*, 74 F.3d at 260 (quoting *Howell v. Tanner*, 650 F.2d 610, 616 (5th Cir. Unit B July 1981)). "It is the movant's burden to persuade the court that a transfer should be granted." *Perlman v. Delisfort-Theodule*, 451 F. App'x 846, 848 (11th Cir. 2012) (per curiam). A transfer that "merely shift[s] inconvenience from the defendant[] to the plaintiff" is improper. *Robinson*, 74 F.3d at 260.

As an initial matter, One Love relies heavily on Florida state court precedent—which has since been overruled, *see Cortez v. Palace Resorts, Inc.*, 123 So. 3d 1085, 1094 (Fla. 2013)—according to which a plaintiff's choice of forum "is given less deference when the plaintiffs are out-of-state residents." *Kerzner Int'l Resorts, Inc. v. Raines*, 983 So. 2d 750, 752 (Fla. 3d DCA 2008). Even if a no-longer-valid state-law precedent somehow controlled, the Foundation is based in Florida.

In any event, One Love has not met its burden. No public-interest factors favor transfer to Maryland. Given One Love's extensive activities in this District, this is not, for example, a case in which the burden of jury duty will be "imposed upon the people

16

of a community which has no relation to the litigation." *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508-09 (1947). One Love's argument to the contrary simply mischaracterizes private-interest factors—for example, that One Love is based in Maryland—as public-interest factors. *See* Mot. Dismiss 12; *see also Gulf Oil Corp.*, 330 U.S. at 508-09 (describing "relative ease of access to sources of proof" as relating to "the private interest of the litigant" and explaining that "[f]actors of public interest" concern matters such as "[a]dministrative difficulties . . . for courts").

One Love's argument regarding private-interest factors fares no better. One Love has not, for example, "identif[ied] any witnesses who could not or would not testify unless the case was transferred." *Perlman*, 451 F. App'x at 848. Indeed, as shown by Ms. Love's recent trip to UNF on One Love business, One Love's witnesses can (and do) readily travel to Duval County. One Love is now located in Maryland. But because the Foundation is based in this District, One Love's position "would merely shift inconvenience from the defendant[] to the plaintiff." *Robinson*, 74 F.3d at 260. That is not a proper basis for a transfer.

## CONCLUSION

One Love's motion to dismiss or transfer this case should be denied.

Dated: March 22, 2024.

        BEDELL, DITTMAR, DeVAULT, PILLANS & COXE
          Professional Association

By:  s/Michael E. Lockamy
     Michael E. Lockamy
     Florida Bar No. 69626
     Email: mel@bedellfirm.com
     John G. Woodlee
     Florida Bar No. 0100990
     Email: jgw@bedellfirm.com
     Sarah R. Niss
     Florida Bar No. 1039817
     Email: srn@bedellfirm.com
     The Bedell Building
     101 East Adams Street
     Jacksonville, Florida 32202
     Telephone: (904) 353-0211
     Facsimile: (904) 353-9307

Counsel for Plaintiff Michael Ward and Jennifer Glock Foundation